United States District Court
Northern District of California

UNITED STATES OF AMERICA,

Plaintiff,

v.

JONATHAN MATTHEW WHITEHEAD,

Defendant.

Case No.: CR 10-00299-1 CW

ORDER OF DETENTION PENDING SUPERVISED RELEASE VIOLATION HEARING

## I. BACKGROUND

On December 3, 2010, Jonathan Matthew Whitehead was sentenced to 30 months in custody and 5 years of supervised release for possession with intent to distribute Methamphetamine in violation of 21 U.S.C. Section 841(a)(1), (b)(1)(c), a Class C felony. Defendant has been on supervised release since July 25, 2012. On July 31, 2014, Defendant's probation officer filed a petition alleging that Defendant had violated seven conditions of his supervised release, namely, (1) that Defendant shall reside for a period of 30 days in a Residential Reentry Center and shall observe the rules of that facility; (2) that Defendant shall abstain from use of any synthetic drugs or intoxicants, including, but not limited to bath salts, spice, salvia, etc.; (3) that Defendant shall refrain from excessive use of alcohol and not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician; (4) that Defendant shall notify the probation officer at least 10 days prior to any change in residence or employment; (5) that Defendant shall not be in the vicinity of the City of Richmond, unless otherwise approved by the probation officer; (6) that Defendant shall not associate with any member of the Project Trojan gang; and (7) that Defendant shall participate in a program of testing and treatment for drug abuse, as

DETENTION ORDER
CR 10-00299-1 CW                                                     1

directed by the probation officer, until such time as the defendant is released from treatment by the probation officer.

In the petition, the probation officer specifically alleged that on May 15, 2014, Defendant was terminated from the Residential Reentry Center ("RRC") located at 111 Taylor Street, in San Francisco, for using "spice", a synthetic cannabinoid. A staff member observed the offender sitting in the dark smoking spice. Defendant began his residence at the halfway house after his release from custody on April 25, 2014. These facts also support charge number 2 in the Form 12.

In addition, on July 21, 2014, Probation Officer Aaron Tam received a telephone call from Defendant's case manager at Center Point residential treatment program in San Rafael. Tam was informed that Defendant was transported to Marin General Hospital the night before due to his complaints of feeling sick. Medical staff determined that Defendant was experiencing withdrawal symptoms from the use of spice. Defendant also admitted that he had used salvia prior to entering the residential treatment program on July 17, 2014.

Further, on June 3, 2014, June 11, 2014, and June 24, 2014, Defendant reported to the U.S. Probation Office in San Francisco and submitted positive urinalysis tests for marijuana. And on June 16, 2014, during an office visit, a urinalysis test collected from Defendant was positive for cocaine.

On June 23, 2014, in an attempt to verify the offender's reported place of residence at 42 6th Street, Room 25, San Francisco, CA, Probation Officer Tam conducted an unannounced home visit. The address belonged to the Desmond Hotel. Tam knocked on the door of room 25 and noticed that room 25 was attached to the manager's office. The manager confirmed the Room 25 belonged to her and that it was not a room for rent. The manager looked at a photograph of Defendant and stated that she had never seen him in the building. Later, on June 24, 2012, during an office visit, Defendant admitted to Tam that he stayed overnight at 2317 McBryde Avenue in Richmond, where his sister and mother reside. He had not previously reported that address.

In addition, on July 14, 2014, at about 9:00 a.m., Officer Tam received a telephone call from the U.S. Marshals Service regarding Defendant being located during a field operation at 1847 Second Street, in Richmond. Deputies arrived at the residence to search for a known sex

offender, who ultimately was not at the location. Defendant was located inside the house along with Bernard Wilfred, a validated Project Trojan gang member. Defendant did not have permission from Officer Tam to be present at that address. On July 17, 2014, Defendant entered the Center Point residential treatment program in San Rafael, at the direction of Officer Tam. He was instructed to participate in the long term inpatient program, which was six months in duration. On July 21, 2014 and July 22, 2014, along with his case manager, Defendant contacted Officer Tam and expressed he had a personal conflict with the structure of the program. He was adamant about his inability to successfully complete the program and expressed concerns regarding safety and security issues. Specifically, he stated that other residents were causing him to feel defensive and placed him in a position where he may respond in a physical nature. He departed from the program on July 22, 2014. Defendant has since reported to the probation office and agreed to maintain contact on a daily basis and to report for weekly office visits.

On July 31, 2014, the District Judge found probable cause to believe that there has been a violation of the conditions of supervision and issued a summons for Defendant to appear in court.

Defendant appeared in court on August 12, 2014, and the court held a hearing on the Government's motion to detain Defendant pending his supervised release violation hearing. Defendant was represented by Assistant Federal Public Defender John Paul Reichmuth. Assistant United States Attorney Wade Rhyne appeared on behalf of the Government. Probation Officer Aaron Tam was also present. For the reasons stated below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

Because Defendant is charged with a supervised release violation, Defendant bears the burden of establishing that he is not a flight risk or a danger to the community by clear and convincing evidence. FED. R. CRIM. P. 32.1(a)(6); 18 U.S.C. § 3143.

Defendant requests that he be released to live with his sister in Richmond – a place that has been previously approved by his probation officer. He contends that his primary problem has been homelessness. Defendant has previously argued to this court that he wants to succeed and requested an opportunity to prove himself, stating that was attending City College. However,

Defendant failed to show up to take any of his final exams, and he made no mention of his desire to continue his education at the most recent hearing. Instead, this time, he argues that he has strong motivation to comply with the conditions of his release because he wants to have his supervision transferred to Texas where he can make a fresh start living with an aunt. A transfer cannot be given while Defendant is in revocation status, and this is his sixth Form 12 involving similar conduct.

The Government persuasively argued that detention is appropriate in this case. The Government noted that Defendant has used the argument that he is young, enrolled in college and making progress at his original sentencing in the underlying case and at the five previous supervised release violation hearings. Each time, except for the last time Defendant appeared in this court on the fifth Form 12, that argument resulted in leniency for Defendant. Specifically, he was sentenced below the guidelines in the underlying case; he was placed in a halfway house multiple times and was given six months of custody on the second supervised release violation. But Defendant has been unwilling to remain in a halfway house as ordered by the court, and while staying with his sister, at the only approved address in Richmond, he was found in the company of a Project Trojan gang member in an area of Richmond not approved by his probation officer. In addition, he has continued to use controlled substances.

The record shows that instead of making an effort to attend college and succeed as he has repeatedly argued that he wants the opportunity to do, he repeatedly violates the court's orders; he fails to follow the instructions of his probation officer; he fails to notify the probation officer prior to a change in residence or employment; he has been in Richmond without approval from the probation officer; he fails to reside at and observe the rules of the halfway house; he continues to use spice and has tested positive for marijuana and cocaine; and he has failed to complete a drug treatment program. The court cannot see how homelessness explains Defendant's behavior during the times he was supposed to be living at the halfway house or at his sister's house.

The probation officer has spoken to Defendant about his homelessness and told him that he simply needs to communicate with probation, and this time, Defendant did make an effort to communicate with Officer Tam. But, at the hearing, the court was unable to obtain sufficient

DETENTION ORDER
CR 10-00299-1 CW                                         4

reassurance from Defendant that he would be willing to comply with all of the conditions of his release if he was permitted to live with his sister on electronic monitoring and more extensive outpatient drug treatment. Instead, he continued to make excuses for his failure to comply. Therefore, the court has no reason to believe that Defendant will do anything differently if he is released at this time.

In light of the above, and having considered the proffers by the parties and the probation officer, and the arguments of counsel, the court finds that Defendant has not shown by clear and convincing evidence that he is not a danger to the community or that he is likely to comply with the conditions of his supervised release.

Therefore, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: August 15, 2014

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR 10-00299-1 CW                5